Mid-States Vending Service, Inc., Plaintiff-Appellee, v. Jack Rosen, et al., Defendants-Appellants.

Gen. No. 51,407.

First District, Third Division.

November 17, 1966.

83

Nathan T. Notkin, of Chicago, for appellant, Jack Rosen.

John R. Fielding, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an interlocutory order granting a temporary injunction restraining defendant, Jack Rosen, from soliciting business of customers of plaintiff, Mid-States Vending Service, Inc., (Mid-States), who had been its customers during the period of employment of Rosen by the plaintiff. The petition for temporary injunction had initially included Rosen's subsequent employer, Dynamic Automatic Leasing Corp., (Dynamic) and the president thereof, Eugene Breakstone. However, after the master's hearing on the petition and answers thereto, plaintiff dismissed the defendants other than Rosen.

Mid-States, an Illinois corporation, is engaged in the business of operating vending machines. In such operation they make contracts with owners or operators of businesses, such as restaurants, taverns, nightclubs, gaso-

line stations, etc., under which contracts they leave vending machines on the premises of the businessmen, fill said machines with merchandise from time to time, and service the machines. The owners of the premises receive commissions based upon the merchandise sold. The amounts and methods of computation of the commissions vary from contract to contract.

The defendant, Dynamic Automatic Leasing Corp., leases cigarette vending machines to owners of various businesses. Their operation differs from that of plaintiff insofar as the owners of premises are lessees of the machines. The lessees fill the machines on their premises and pay monthly rentals to Dynamic.

The defendant Jack Rosen was employed by one Rowe Service Company (Rowe) prior to January of 1965. During that month the plaintiff purchased about seven hundred fifty (750) cigarette vending machines from Rowe and received assignments of the contracts involving these machines, which were then being operated in various locations. About that time Rosen left Rowe and went to work for Mid-States in the capacity of salesman and adjuster. His duties were primarily seeking out new customers and servicing complaints of the current customers. During that time he was under no written contract and he never entered into a covenant not to compete with plaintiff. He stayed in this position until early March, 1965, at which time he became employed by Dynamic in a similar capacity. Since May, 1965, Rosen has been a free lancer in the same business, obtaining locations for various vending machine operators on a commission basis.

A period of about four months had elapsed from the termination of Rosen's employment by Mid-States to the date of the master's hearing, during which period plaintiff lost some fourteen customers. These locations are now serviced by Dynamic. Mid-States had about eleven hundred (1100) machines in operation at that time made

up of three hundred fifty (350) originally belonging to it and seven hundred fifty (750) purchased from Rowe.

Plaintiff's president, Kiley, testified that he was never aware of any customer lists held by Mid-States' salesmen. He further said he "must assume" Rosen was familiar with and subsequently "went after" the fourteen locations that are now served by Dynamic. Kiley could not testify to personal knowledge of any actual solicitation of these customers by Rosen. Defendant Breakstone testified that ten of the customers had come to Dynamic through Rosen and that the others had come through other sources.

Defendant Rosen contends on appeal that the motion for temporary injunction should not have been granted for the reasons that (1) in absence of specific agreement not to compete with a former employer, it is legitimate for an employee to so compete, once the employment relationship has terminated; (2) competition in trade or business is a justification for interference with contract; (3) most of the contracts allegedly interfered with were illegal under the Municipal Code of Chicago, chap 147, par 16.2, so that plaintiff is not petitioning with "clean hands," and (4) no irreparable injury was shown by the plaintiff.

Defendant first argues that a person is free to compete with his former employer in absence of an express agreement not to do so. Defendant relies upon American Cleaners & Dyers v. Foreman, 252 Ill App 122, in which the former employee, a laundry route salesman and deliveryman, had ceased working for the plaintiff and had gone into business for himself and, within a month thereafter, had taken away thirty-nine of the forty-three customers on his old route. Defendant took no list of customers when he left plaintiff's service, but was evidently familiar with his route customers. In the absence of an express covenant not to compete, nor to contact these customers, the court refused to enjoin defendant

from soliciting business from the customers whom he had serviced while employed by plaintiff. The court quoted with approval a similar case, Fulton Grand Laundry Co. v. Johnson, 140 Md 359, 117 A 753, saying at page 133:

> "But, while we do not decide that there might not be cases in which an employer should be protected from the use by an employee of a list of customers, fraudulently and surreptitiously obtained, or where, in the nature of the particular case, or by reason of the care used in concealing them, the names of customers are so guarded as not to be easily obtainable by others than confidential employees, we are not willing to hold that in any ordinary business an employee, on going into business for himself or into the employ of another, should be enjoined from seeking to do business with friends he has made in the course of a previous employment, merely because he became acquainted with them while so engaged. . . . Under such a rule, a traveling salesman, every time he changed employers, if in a like business, would be compelled to give up all the friends and business acquaintances made during the previous employment. Such a rule would tend to destroy the freedom of employees and to reduce them to a condition of industrial servitude."

Another case, Professional Service Corp. v. Johnson, 316 Ill App 431, 45 NE2d 191, held that a defendant could solicit his former employer's customers, even though he had been employed as manager of plaintiff's collection agency.

On the other hand, plaintiff cites House of Vision, Inc. v. Hiyane, 58 Ill App2d 431, 208 NE2d 390, in which the court affirmed the granting of a temporary injunction against defendant, a former employee of plaintiff. The order restrained defendant from the solicitation of plain-

tiff's customers. A written employment contract between the parties had contained a restrictive covenant under which defendant agreed not to compete with plaintiff after the employment relationship ended. There was evidence that defendant had actively solicited plaintiff's customers. Because of the restrictive covenant and the actual solicitation of customers by the defendant, this case does not control in the case at hand.

Rosen and Mid-States had no written contract and there was no agreement not to compete. Rosen had, according to his testimony, dealt with only ten of the fourteen customers Mid-States lost to Dynamic. Plaintiff presented no positive evidence that Rosen had solicited these or any other customers. The only testimony relating to such activity was by Rosen, to the effect that he had not solicited the business of these locations. It was only after he had been contacted by them or had been advised that they were attempting to locate him that Rosen discussed the possibility of these customers being served by Dynamic.

■■ Defendant cites cases that clarify what an employee may take with him when changing employers or entering into competition with his former employer. Generally he may take all skill and knowledge received during the employment, so long as he takes nothing belonging to the employer. Activated Sludge v. Sanitary Dist. of Chicago, 33 F Supp 692, affirmed as Guthard v. Sanitary Dist. of Chicago, 118 F2d 899. In the instant case Rosen had taken no customer list with him from Mid-States, nor had he given any such list to Dynamic. The testimony showed only that Kiley "must assume" that Rosen had become familiar with all the locations involved in this case. This does not indicate the existence of a customer list, but shows only that Rosen may have been familiar with those with whom he dealt while in plaintiff's employ.

Rosen further contends that although the customers who changed from Mid-States service to Dynamic service had been under contract with the former, business competition justifies the interference with those relations. London Guarantee Co. v. Horn, 206 Ill 493, 69 NE 526, involved an action for malicious interference with an employment contract. The court held competition in trade, employment, or business, in the absence of fraud, to be sufficient justification for interference with existing contract relations. This competition surely existed here between Mid-States and Dynamic or Rosen. Plaintiff also cites cases dealing with tortious interference with contract relations; however, study of these cases disclosed that they are not controlling on the facts. Although plaintiff contends that Rosen induced the customers to break existing contracts with the plaintiff, no evidence was introduced in support of this contention. It may even be said the customers had made their decisions to sever their relations with Mid-States, or were at least contemplating such moves, before contacting Rosen. It was dissatisfaction with the plaintiff's service that prompted the contacts with Rosen. According to Rosen, one customer had said he felt he was being cheated by Mid-States. It appears, therefore, that Rosen merely gave these locations a subsequent opportunity to contract elsewhere.

Because the evidence does not show that defendant Rosen solicited the customers of his former employer, nor induced the breaches of contract involved, we feel it unnecessary to discuss defendant's points regarding the alleged illegality of the contracts of Mid-States and its customers and the alleged failure on the part of plaintiff to prove irreparable injury.

The master found that plaintiff had raised a fair question of its right to injunctive relief. A temporary injunction will not issue unless the evidence shows

that defendant is doing or threatens to do something contrary to law and prejudicial to plaintiff. Here the evidence is wholly lacking as to solicitation of customers by defendant, and, therefore, there could be no showing of illegal, unjustifiable or injurious solicitation of plaintiff's customers. The order granting the temporary injunction restraining Rosen must be reversed.

Reversed.

SCHWARTZ and DEMPSEY, JJ., concur.